## SECURITY STATE BANK OF MIAMI, OKL., v. FIRST NAT. BANK OF KANSAS CITY, MO.

Circuit Court of Appeals, Eighth Circuit. April 20, 1928.

No. 7877.

Banks and banking ⊚⇒65—Bank, organized to take over assets of insolvent bank and assuming liabilities, with certain exceptions, held liable on certificate within such exception.

Bank, incorporated as means of reorganization of insolvent bank and taking over all of assets and assuming all liabilities, with exception of certain certificates, in accordance with approval of state court, after informal hearing on offer and without representation of holder of certificate not assumed as liability, *held* liable for payment of such certificate, whether or not there was an implied promise on part of new bank to pay obligation, since otherwise transaction constituted a fraud.

Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Suit by the First National Bank of Kansas City, Mo., against the Security State Bank of Miami, Okl. Decree for plaintiff, and defendant appeals. Affirmed.

Dennis H. Wilson, of Miama, Okl., for appellant.

Paul R. Stinson, of Kansas City, Mo. (I. P. Ryland, Frank A. Boys, Arthur Mag, and R. B. Thomson, all of Kansas City, Mo., on the brief), for appellee.

Before KENYON, Circuit Judge, and SCOTT and SYMES, District Judges.

SCOTT, District Judge. This is an appeal from a decree of the District Court of the United States for the Northern District of Oklahoma, in favor of the appellee, First National Bank of Kansas City, Mo., and against the appellant, Security State Bank of Miami, Okl., permitting recovery of judgment for $3,250, and interest on a certificate of deposit issued by the First State Bank of Miami, Okl., to D. N. Fink, negotiable in form, and indorsed in due form to appellee, First National Bank of Kansas City, Mo. From the plaintiff's bill and from the undisputed testimony it appears: That the certificate of deposit was duly issued and indorsed and transferred before maturity in due course to the appellee. That on maturity the certificate was presented to First State Bank for payment and payment refused. Shortly thereafter the First State Bank, being financially embarrassed and its capital practically reduced to the zero point, was taken possession of by the state bank commissioner of Oklahoma under the state law, and the assistant commissioner in charge, after examination, closed the bank, and in the meantime negotiations and activities were initiated and progressed looking toward reorganization. A number of the stockholders in the First State Bank were interested and instrumental in these activities, and they progressed with such expedition that arrangements for the organization of a new bank were made during the progress of the examination of the old bank. The new bank was incorporated, a new capital supplied, the entire assets of the original bank arranged to be transferred to the new bank, and all liabilities of the old bank to be assumed by the new bank with the exception of two certificates of deposit, the one in controversy for $3,250, and another of like amount. A formal proposition by the state authorities and the old bank was made to the new bank, by the terms of which the new bank was to take over the entire assets of the old bank and assume all of its liabilities, with the exception of the two certificates stated. This offer was submitted to the district court of Ottawa county, having jurisdiction over the liquidation, for approval, and after a rather informal hearing was approved. The First National Bank of Kansas City, holder of the certificate of deposit in suit, was not represented, and took no part in that transaction. The expedition with which this transaction progressed and was consummated is indicated by the testimony of the bank commissioner in the following questions and answers:

"Q. Where did you get the information about the organization of the Security State Bank and of the fact that its complete organization depended upon getting this matter through in the way just described? A. Mr. Tolbert Thompson was an officer of the First State Bank; therefore knew during the course of the day that it would be necessary that the bank be closed and taken possession of by the commissioner. In order to prevent inconveniencing the public and that the business of the bank might be carried on, Mr. Thompson proceeded to organize or lay plans for an organization to take over the First State Bank, the result of those to be dependent upon the confirmation of the court and approval of the bank commissioner.

"Q. As a matter of fact, then, the bank was never actually closed, but continued to transact business right along, and when the new bank was organized the name of the bank was simply changed, and its doors never actually closed? A. The door was actually closed, and a bank commissioner's notice pasted on the door, and taken possession of just the same as any other bank that is closed. Between the time the bank was closed and the time to open on the next day a new bank was organized, which had paid in a new capital stock, purchased the assets, and assumed the liabilities and opened for business.

"Q. The new bank opened for business at the same place as the old? A. Naturally so, after having purchased the assets and location of the old building."

Upon the trial of the cause, the District Court found:

"3. That on or about May 19, 1922, the First State Bank of Miami, Okl., a banking corporation, executed and delivered to D. N. Fink its certificate of deposit, payable to the order of said Fink, in the sum of $3,250; that said certificate of deposit was given in renewal of a certificate of deposit of like import for the same amount of money and payable to the order of said D. N. Fink; that said original certificate of deposit, before maturity thereof and for a valuable consideration, was indorsed and delivered by said D. N. Fink to the plaintiff, and that the plaintiff purchased the same from said Fink as

bona fide purchaser and for value without notice of any defect or defense thereto, and that the plaintiff has always been and is now the owner and holder of the certificate of deposit of date May 19, 1922—to which finding of the court the defendant at the time duly excepted.

"4. That on or about December 7, 1922, the defendant took over all of the assets of the said First State Bank of Miami, and impliedly assumed all of the valid obligations of said bank; that in taking over said assets defendant did not purchase the same, but they were merely transferred to the defendant as the succeeding corporation of said First State Bank of Miami—to which finding of the court the defendant at the time duly excepted.

"5. That the assets of said First State Bank of Miami so taken over by the defendant on said December 7, 1922, were approximately equal in value to the obligations of said First State Bank of Miami, and greater in value than the amount of the plaintiff's claim, and that of said assets so taken over by the defendant more of them in value than the amount of plaintiff's claim were converted by the defendant to its own use—to said finding the defendant at the time duly excepted.

"6. The court further finds that the order of the district court of Ottawa county, Okl., made and entered on December 7, 1922, was and is not binding on the plaintiff, and to the extent that it affects or attempts to affect the rights of the plaintiff in the premises, the same is hereby vacated and set aside —to which finding of the court the defendant at the time duly excepted.

"7. The court further finds, that on the day that said assets were taken over by the defendant, the said First State Bank of Miami ceased to transact business as a corporation, and was dissolved, and that from and after the transfer of said assets there were no assets of said First State Bank of Miami remaining from which any creditor could obtain payment of his claim.

"8. The court further finds that the defendant was not guilty of fraud in taking over the assets of said First State Bank of Miami—to which finding the plaintiff at the time duly excepted.

"9. The court further finds that no part of the plaintiff's claim has ever been paid and that payment thereof was refused by the said First State Bank of Miami on November 20, 1922, and that plaintiff is entitled to recover from the defendant the sum of $3,250, together with interest from November 20, 1922, at the rate of 4 per centum per annum, being the sum of $3,818.76—to which finding of the court the defendant at the time duly excepted."

The Security State Bank appeals, and assigns a number of errors, notably as to the court's findings in paragraphs 3, 4, 5, 6, and 9. We do not find it necessary to discuss seriatim each of the errors assigned. Suffice it to say, the appellant contends that under the statute of Oklahoma, with the approval of the court, the bank commissioner had authority to sell the assets of the closed bank, that the assets were entirely sold to the appellant, the new bank, acting as a distinct entity, and that payment of the certificate in controversy was not assumed by the terms of the purchase, and that appellant is not therefore liable. We think it not very important to determine whether the creation of the new bank was merely a reorganization of the old, or whether the new bank purchased the assets. The indubitable fact remains that the new corporation, with full knowledge of the whole situation and the insolvency of the old corporation, took over its entire assets at a time when the old corporation was insolvent, and in course of liquidation, and its assets equitably impressed with a trust in favor of all creditors. As stated, it took over these assets in toto, and converted them to its own use, leaving the old bank only a memory. The trial court held that there was an implied promise on the part of the new bank to pay all obligations of the old bank. This finding was entirely justified, unless the circumstances made it entirely clear that such was not the intention. If the circumstances did make it entirely clear that such was not the intention, then with the notice that was present to all those interested in the organization of the new bank, it is difficult to see why a palpable fraud was not intended. At least it was clear to all concerned that their acts were calculated to, and would if permitted to stand, entirely deprive the appellee of all resources out of which any part of its claim could be realized. In other words, we think the appellant rendered itself liable for the payment of the claim in controversy.

From the conclusions which we have reached, the decree of the District Court must be and is affirmed.